Matter of Dominick R. v Jean R. (2005 NY Slip Op 50776(U))

[*1]

Matter of Dominick R. v Jean R.

2005 NY Slip Op 50776(U)

Decided on February 14, 2005

Family Court, Kings County

Hepner, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 14, 2005

Family Court, Kings County
In the Matter of a Proceeding pursuant to Article VI of the Family Court Act for custody of Dominick R., RICHARD Y., Petitioner
against
Jean R., Respondent.
xxx

Marvin Usdin, Esq., for the Petitioner
374A 8th Street
Brooklyn, New York 11215
Leonard S. Lubitz, Esq., for the Respondent
350 Broadway, Suite 200
New York, New York 10013
Rita M. Kaufman, Esq., Law Guardian
Children's Law Center
44 Court Street, 11th Floor
Brooklyn, New York 11201

Paula J. Hepner, J.
Petitioner filed a motion on August 9, 2004 to modify the parties previous custodial [*2]arrangement for their thirteen year old son, Dominick R., and trial is scheduled for May 23, 2005. Before the Court is a motion pursuant to Rule 408 of the New York Practice Law & Rules [hereinafter "CPLR"] to vacate Petitioner's "Notice to Take Deposition Upon Oral Examination" that was "So Ordered" by this Court on January 12, 2005, and a motion pursuant to CPLR 3103 for a protective order.[FN1] The motions were returnable February 8, 2005 and on that day counsel for both parties and the Law Guardian appeared.
At oral argument on February 8, 2005 counsel for the Respondent argued that the Notice should be vacated since it was obtained ex parte and not by motion upon notice as required under CPLR 408. Respondent's counsel cited as authority for this view Atkinson v Trehan (70 Misc 2d 612 [NYC Civ.Ct. NY Co. 1972]). A further argument advanced by Respondent's counsel was that the Notice should be vacated because "discovery is prohibited in a child custody case" (P. v P., 93 Misc 2d 704 [Sup.Ct. NY Co. [1972]).
Counsel for the Petitioner argued the holding of the Atkinson case was inapplicable to the instant matter since that case involved a summary proceeding to recover possession of real property. Petitioner's counsel further argued that the basis for the holding of P. v P. (93 Misc 2d 704, 705-706 [Sup.Ct. NY Co. 1978]), which was that the parties might remarry, was not applicable here since these parties were never married. In support of his application to proceed with the deposition, counsel for the Petitioner cited Maxwell v Maxwell, 88 Misc 2d 535 [Sup.Ct. Albany Co. 1976]). Petitioner maintained that his purpose in taking the deposition would be to eliminate the need to explore non-productive lines of inquiry at the trial. In asking that the deposition go forward, counsel for the Petitioner stressed the fact that Respondent: did not claim anything in the Notice was improper subject matter for a deposition; did not claim anything in the Notice was not material and relevant to the issues the Court will have to decide; did not claim that the Notice was not specific enough or overbroad, and did not claim that the Notice posed an undue hardship or was unduly burdensome.
The Law Guardian filed no papers in support of or in opposition to the motions but asked to be heard at oral argument. She expressed support for the Respondent's motion to vacate the Notice, first because leave of court was not obtained under CPLR 408, and second because the Petitioner did not make a showing of "need" for the deposition. She argued that the Petitioner could use less stressful ways to obtain the discovery he seeks that would not enmesh the child any further in the parties' bitter fight. The Law Guardian speculated that the deposition was nothing more that a means "to harass the mother and gain control of the situation" and therefore should be vacated. The Law Guardian maintained that in the Second Department a court must balance the best interests of the child with the burden of the discovery before allowing it to proceed and she cited Garvin v Garvin (162 AD2d 497 [2d Dept. 1990]), Ochs v Ochs (193 Misc 2d 502 [Sup.Ct. Westchester Co. 2002]) and Slawiak v Hollywood (123 Misc 2d 435 [Sup.Ct. Erie Co. 1984]) as support for this position.
[*3]
In his Notice to Take Deposition Upon Oral Examination, Petitioner seeks to depose the Respondent "with respect to evidence material and necessary in the prosecution of this proceeding." More specifically, the Notice states that she is to be questioned about "All of the issues raised by the Petition[FN2] and Affidavits submitted in this proceeding by both parties[FN3] and such issues raised by either party[FN4] that will be submitted on the hearing." Respondent was directed to bring to the deposition "all school records, medical and hospital records of Dominick R., the son of the parties." In an affirmation resubmitted with his answer to the Respondent's motions, counsel for the Petitioner asserts that "the deposition will expedite the hearing and, hopefully, clarify some of the significant issues raised by the papers pre-viously filed in this proceeding."[FN5]
Custody proceedings brought pursuant to the Family Court Act are "special proceedings" rather than "actions" and, as such, are governed by Article 4 of the CPLR. Unlike CPLR 3102(b), which provides for "disclosure by stipulation or upon notice without leave of court," CPLR 408 specifically provides that "leave of court shall be required for disclosure" in a special proceeding. Case law has interpreted this to mean that a party seeking disclosure by one of the devices enumerated in CPLR 3102(a) must move by notice of motion or order to show cause demonstrating the need for it and obtain an order of the court authorizing it (Atkinson v Trehan, 70 Misc 2d 612 [NYC Civ.Ct. NY Co. 1972]). The Petitioner did not act in accordance with CPLR 408, however rather than vacate the Notice for failure to comply with CPLR § 408, the Court will treat the Petitioner's answering papers as an application pursuant to CPLR § 408 and the Respondent's moving papers as a cross-motion in opposition thereto (Slawiak v Hollywood, 23 Misc 2d 435-439 [Sup.Ct. Erie Co. 1984) and address the merits of the application.
Historically, a party to a matrimonial action was not "permitted to force discovery of facts material to the elements of the cause of action for divorce" unless the party seeking it was able to make "some showing of extraordinary circumstances" (Maxwell v Maxwell, 88 Misc 2d 535, [*4]536 -538 [Sup.Ct. Albany Co. 1976]) or, in the language of the Second Department "a showing of substantial merit"(Hunter v Hunter, 10 AD2d 291, 294-295 [2d Dept. 1960]).
The Court of Appeals has not addressed the use of disclosure devices in matrimonial actions since 1975. In a case where the defendant was served with a notice to submit to a physical examination pursuant to CPLR 3121, the Court of Appeals held that discovery of this type was not prohibited in matrimonial actions and, while recognizing "the potential for abuse in these cases," said the trial court 's "broad discretionary power to grant a protective order 'to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts' (CPLR 3103) should provide adequate safeguards" (Wegman v Wegman, 37 NY2d 940, 941 [1975]). The decision in Wegman came shortly after the Legislature amended Section 250 of the Domestic Relations Law to make financial disclosure compulsory in matrimonial actions without the need to show any special circumstances. Subsequent to this, matrimonial attorneys began to use other discovery devices (interrogatories, bills of particulars, submission to physical examination, oral depositions) with court approval. Notwithstanding the relaxation of restrictions on the use of discovery devices in matrimonial actions, the four appellate courts are evenly divided over the question of whether "the rule prohibiting the discovery of information concerning the merits of a matrimonial action" (P. v P., 93 Misc 2d 704, 705-706 [Sup.Ct. NY Co. 1978]) as well as whether the rule in custody matters should also be changed. The Fourth Department has held there is "no rational basis for requiring less than full disclosure in matrimonial actions" (Lemke v Lemke, 100 AD2d 735-736 [4th Dept. 1984]) and trial courts have been following this approach (Westrom v Westrom, 130 Misc 2d 265-266 [Sup.Ct. Chautauqua Co. 1985]; Slawiak v Hollywood, 123 Misc 2d 435-439 [Sup.Ct. Erie Co. 1984]). The Third Department rejected the principle that "disclosure on the merits in matrimonial actions is prohibited absent some showing of extraordinary circumstances" (Nigro v Nigro, 121 AD2d 833, 834 [3rd Dept. 1986]) and, rather than adopt a policy of full disclosure, held that "any such restrictions are better left to individual protective orders to prevent abuse, rather than embodied in a blanket prohibition." The First Department continues to require a showing of "unusual circumstances [to depart] from the principle against disclosure (McMahan v McMahan, 100 AD2d 826, 828-830 [1st Dept. 1984]; Billet v Billet, 53 AD2d 564 [1st Dept. 1976]). The Second Department is in accord with the First Department in holding that "the enactment of a compulsory financial disclosure statute did not alter the long-standing prohibition against pretrial discovery of information concerning the merits of a matrimonial action" (Ginsberg v Ginsberg, 104 AD2d 482-484 [2d Dept. 1984]; See also, Garvin v Garvin, 162 AD2d 497, 499-500 [2d Dept. 1990]). Notwithstanding these cases, some trial courts have moved in the direction of making these determinations on a case-by-case basis rather than by applying an inflexible rule or requiring a showing of special circumstances (Ferguson v Ferguson, 2 Misc 3d 277-279 [Sup.Ct. Nassau Co. 2003]) .
Turning to the facts of the instant matter, this Court finds that the Petitioner's papers do not demonstrate "unusual circumstances" to depart from the rule prohibiting discovery in custody matters. The issues raised in Petitioner's affidavits[FN6] address matters not capable of factual determination through discovery but rather will be resolved through an assessment of credibility. [*5]Some of the matters such as when visitation occurred and when it didn't are within the Petitioner's personal knowledge, not the Respondent's. He premises the "need" for a deposition on the hope that the trial will be shortened if discovery is granted. Tempting as that may be, custody trials are all too become a forum to air long-smouldering wrongs ranging from petty gripes to the most painful breaches of trust and become an opportunity to "even the score." Granting the deposition in this case on the issues set forth in this case would simply give the parties two opportunities to do this instead of one. In summarizing the state of the law in the Second Department, the trial court in Ochs v Ochs (193 Misc 2d 502, 506-508 (Sup.Ct. Westchester Co. 2002) concluded that "before such discovery is allowed, a showing is required of some specific need for disclosure beyond the materiality of the information sought and its general utility in litigating the issues." Petitioner offers little more than this in support of his Notice to Take Deposition Upon Oral Examination. This application must be denied for the same reason the Appellate Division set forth in Garvin (162 AD2d 499-500) which is that, "There are no facts the petitioner claims he needs to discover...it appears that the petitioner wishes to conduct his own investigation into the background of the mother..., the effect of which can only be to unreasonably annoy, harass and embarrass the participants."
Accordingly the Court finds that the Petitioner has failed to meet his burden to show there is a "need" for a pre-hearing deposition of the mother and the Respondent's motion to vacate the So Ordered Notice is granted. To the extent the Petitioner's Notice can be construed as a demand for discovery, that part of the Notice is granted and the Respondent is directed to produce "all school records, medical and hospital records of Dominick R." for the past three years to Petitioner's counsel's office on or before April 1, 2005. Should the Respondent no longer have these documents in her possession she is to arrange for copies to be reproduced and given to the Petitioner's attorney.
E N T E R :
_________________________________PAULA J. HEPNER, J.F.C.
Footnotes

Footnote 1: Petitioner's first Notice to Take Deposition upon Oral Examination, dated January 12, 2005 was not So Ordered and was for the date of February 7, 2005. Petitioner's subsequently submitted a second Notice to Take Deposition upon Oral Examination, also dated January 12, 2005, which was So Ordered. In his answering papers to Respondent's motions, Petitioner submits an affirmation which he claims was submitted to the Court along with the second Notice. Petitioner's affidavit dated January 18, 2005 is not in the court file. The case was not on the Court's calendar on January 12 or January 18, 2005. 

Footnote 2: In the petition, at ¶8, it is alleged that although the arrangement of the parties was custody to the mother and two days per week visitation to the father, Petitioner claims he has been caring for his son five or six days each week since September 2003. At ¶10, the Petitioner alleges the mother has significant emotional problems and annexes the transcripts from a number of telephone messages she left on his answering machine as proof thereof. At ¶12, the Petitioner alleges the mother has told him "she wants to be free on weekends to do what she wants" and "refuses to waste her time acting as [the child's] chauffeur...[to and from] games and activities." At ¶13, Petitioner alleges the mother "keeps [Dominick] out of school regularly,...often keeps him up to early hours of the morning so that he is unable to wake up in proper time for school." At ¶14, Petitioner alleges his son is not doing well in school, arranged for him to see a child psychologist but "the mother refused to take him." At ¶18, Petitioner alleges the mother "has three other children and grandchildren and she insists the Dominick not interfere with her desire to visit these other family members when she wants to."

Footnote 3: Respondent did not file an answer to the petition.

Footnote 4: Petitioner filed an Order to Show Cause on January 4, 2005 seeking an interim visitation order in which he claimed at ¶4 that the mother had denied him visitation over the Christmas holiday and school recess; at ¶6 that the mother "makes frequent use of the phone to berate me" and annexes transcripts from a number of telephone messages she left on his answering machine.

Footnote 5: Affirmation of Marvin Usdin, Esq., dated January 18, 2005 at ¶5.

Footnote 6: See Footnotes 2 and 4.