OPINION OF THE COURT
Anthony J. Falanga, J.
This is a motion by the wife for an order quashing the nonparty subpoena and deposition notice served on M.M. and granting a protective order precluding the husband from seeking disclosure from Mr. M. on the ground that he is improperly seeking pretrial discovery relating to custody/visitation matters. The husband opposes the application for a protective order on the ground that he seeks disclosure to enable him to defend against the wife’s application for an order seeking to hold him in contempt.
Pursuant to an order dated August 25, 2006, the husband was temporarily enjoined from exercising overnight visitation in any premises in which his paramour was present, pending disposition of the action or further order. Pursuant to an order to show cause submitted on March 28, 2008, the wife moved for an order adjudging the husband in contempt for his alleged failure to comply with said order dated August 25, 2006. She also sought an order (1) terminating overnight visitation, (2) prohibiting the husband from providing the parties’ son with any food except in a kosher restaurant, (3) prohibiting the husband from allowing any contact between the parties’ son and the husband’s paramour, and (4) awarding the wife counsel fees. The husband cross-moved for an order appointing a custody forensic expert and establishing a delineated schedule of visitation. He also sought an award of counsel fees. The application for the appointment of a forensic expert was rendered moot as such expert was appointed pursuant to an order dated February 22, 2008. Additionally, on that date, the parties entered into an interim schedule of visitation, without prejudice, affording the husband access to the parties’ son on alternate weekends and Monday and Wednesday evenings, subject to the terms and conditions of an order dated August 25, 2006.
In support of her application for an order adjudging the husband in contempt, the wife contended that 411 hours of surveillance over a period of 15 months uncovered 12 nights during which the husband’s paramour was present on the *399 premises overnight while the parties’ son was present and further uncovered certain acts committed by the husband or his paramour in contravention of Orthodox Jewish law (such as feeding non-kosher pizza to the child). In opposing the application, the husband questioned the accuracy and veracity of the private investigator’s reports, and presented documentary proof that on one weekend when the investigator claimed the paramour was on the same premises as the child overnight, she was actually in San Diego.
Pursuant to an order dated April 16, 2008, said applications were referred to the trial of the action calendared for June 10, 2008, and later adjourned to July 15, 2008. The parties were ordered to contact the court’s case analyst on or before April 21, 2008 to schedule parental access mediation with regard to the child, and access between the husband and the parties’ son was continued in accordance with the schedule agreed to on February 22, 2008, pending further order or written agreement of the parties.
In support of the instant application, the wife’s attorney relies on well settled case law in the Appellate Division, Second Department, prohibiting pretrial discovery on custody/visitation issues (see Garvin v Garvin, 162 AD2d 497 [1990]; Corsel v Corsel, 133 AD2d 604 [1987]; Ginsberg v Ginsberg, 104 AD2d 482 [1984]; Hunter v Hunter, 10 AD2d 291 [I960]; Ochs v Ochs, 193 Misc 2d 502 [2002]; K. v K., 126 Misc 2d 624 [1984]; P.v P., 93 Misc 2d 704 [1978]). In opposition, the husband’s counsel cites Kosovsky v Zahl (165 Misc 2d 164 [1995]), directing disclosure of custody/visitation relevant surveillance videotapes, and this court’s decision in Ferguson v Ferguson (2 Misc 3d 277 [2003]), permitting a pretrial deposition of an educator employed by a child’s school for limited inquiries relevant to the quality and nature of the academic programs available at the school.
In her reply herein, the wife has consented to provide the husband with copies of surveillance tapes and photographs that depict the image of the husband and/or his paramour.
The policy in the Second Department, restricting pretrial discovery relating to the issue of custody/visitation, enunciated in 1960 in Hunter v Hunter (supra), remains relevant and meritorious today. In fact, the recent trend toward joint custody places greater emphasis on the need to ameliorate against the possible exacerbation of any antagonism between parents that might result from such disclosure. For example, the parties to a matrimonial litigation may settle the issue of custody/visitation *400 without one party having disclosed that he or she obtained surveillance videotapes, a fact, that if revealed, might undermine the parties’ future efforts to co-parent. Clearly, CPLR 3101 (i) mandating the disclosure of surveillance tapes should not be broadly applicable to custody/visitation litigation, as such disclosure could be contrary to the best interests of the children.
Nevertheless, the prohibition against pretrial disclosure on the issue of custody/visitation should be applied as a shield to protect the viability of the parents’ relationship. It should not be utilized as a sword, enabling one party to ambush the other at trial. Once the existence of surveillance videotapes and/or photographs is voluntarily revealed, there is little the court can do to assuage any resulting antagonism. Further, disclosure of such easily manipulated evidence generally mandates its pretrial disclosure to assure accuracy (CPLR 3101 [i]; see DiMichel v South Buffalo Ry. Co., 80 NY2d 184 [1992]).
After balancing the benefit of permitting the disclosure at issue herein against any detriment the disclosure might cause (see S.C. v H.B., 9 Misc 3d 1110[A], 2005 NY Slip Op 51485[U] [2005]; Ferguson v Ferguson, supra), the court finds the husband’s need to verify the accuracy of the tapes and/or photographs, and to ascertain the circumstances under which same were obtained, outweighs any harm that might ensue from such disclosure. This is particularly true in the instant action where the tapes and/or photographs are being offered by the wife, not only on the issue of custody/visitation, but also in support of her application for an order adjudicating the husband in contempt, exposing him to possible punishment by incarceration.
Based upon all of the foregoing, the motion for a protective order is denied. The husband shall be entitled to discovery of the surveillance material at issue herein as is required pursuant to CPLR 3101 (i). In addition, within 20 days of the date of this order, on a date selected by mutual agreement of the nonparty and counsel for the parties and children, the husband may depose Mr. M.