■ JEFFREY R. GARVIN, Respondent, v ROSE M. GARVIN, Appellant.—In a child custody proceeding, the mother appeals, by permission, as limited by her brief, from so much of an order of the Family Court, Suffolk County (Berler, J.), entered February 15, 1990, as granted those branches of

petitioner's motions which were to compel her to submit to a psychological evaluation by the petitioner's expert, and to compel her and a third party to submit to a "radio immunoassay" of the hair for the purpose of detecting the use of drugs, and denied her cross motion, *inter alia,* for a protective order quashing a subpoena of the third party, and vacating certain notices to appear for depositions.

Ordered that the order is modified, (1) by deleting the provisions thereof which granted those branches of the petitioner's motions which were to compel the mother to appear for evaluation by petitioner's expert, and to compel her and the third party to appear before a licensed physician and to submit a hair sample for radio immunoassay tests, (2) by deleting the provision thereof which denied that branch of the mother's cross motion which was for a protective order quashing a subpoena of the third party and vacating certain notices to appear for depositions, and (3) by substituting therefor provisions denying the petitioner's motions in their entirety and granting those branches of the cross motion which were to vacate two notices of deposition dated January 11, 1990, and the subpoena of the third party dated January 11, 1990; as so modified, the order is affirmed insofar as appealed from, with costs to the mother.

On the eve of the trial of what the Family Court has termed a protracted and bitterly contested custody dispute referred to it by the Supreme Court *(see,* Family Ct Act §§ 467, 652), the petitioner father moved to compel the mother to submit to psychological evaluation and testing by his expert, a psychologist who had already examined him and the parties' child. Although a forensic investigation had been directed but had not been then completed, the sole ground for the petitioner's request was that testing and evaluation of the mother would enable the petitioner's expert to make a "full evaluation".

The father also made a separate motion to compel the mother and a third party, denominated as her "live-in paramour", to appear for radio immunoassay testing of hair samples for the purpose of detecting the use of drugs. The premise for this application was the third party's presence in the household with the parties' child, his arrest in 1989 for misdemeanor possession of marihuana which resulted in an adjournment of the case in contemplation of dismissal, the mother's association with him, and a claim that the petitioner in 1986 twice smelled marihuana on the mother's breath. Although there is some indication that the parties and the third party agreed in principle to submit to drug testing, no

particular type of testing was specified. Moreover, there is no admission that the mother used drugs of any sort, including marihuana.

While these motions were pending, the petitioner also served a subpoena on the third party and notices to take the depositions of him and of the mother. Annexed to each notice was a rider calling for the production of a wide range of documents, including financial records, housing histories, telephone bills, and "Court records" from 1986 to the present, as well as the third party's and the mother's childhood school records. The mother thereafter cross-moved, *inter alia,* to quash the subpoena and vacate the notices of depositions. She also sought to compel the petitioner to turn over videotapes he had made, *inter alia,* of visits with the child, notwithstanding that, on December 19, 1989, the Family Court had "on consent" directed that the videotapes be turned over.

Although expressing displeasure at the timing and serial nature of the petitioner's motions, the Family Court, finding no basis for a protective order, granted the petitioner virtually all of the testing and disclosure he sought. It concomitantly denied the mother's cross motion regarding the subpoena and the notices of depositions, and, with respect to the request to turn over videotapes, the Family Court simply referred to its earlier order. We conclude that the petitioner should not be afforded the testing and disclosure ordered here.

It is true that the "broad scope of discovery permitted under the CPLR takes on particular significance in child custody disputes" *(Burgel v Burgel,* 141 AD2d 215, 216). It is also true that parties to a contested custody proceeding place their physical and mental condition at issue *(see, Rosenblitt v Rosenblitt,* 107 AD2d 292, 293-294). But because the potential for abuse in matrimonial and custody cases is "so great" *(see, Lohmiller v Lohmiller,* 118 AD2d 760; *cf., Wegman v Wegman,* 37 NY2d 940; *Rosenblitt v Rosenblitt, supra),* the court's discretionary power to limit disclosure and grant protective orders is equally broad, and should have been exercised here.

In this case, the petitioner's request for psychological testing of the mother by his expert, where neutral forensic investigation had been ordered, was premised on nothing more than a desire to bolster his expert's credibility, a ground we have previously held to be insufficient justification for such an examination *(see, Rosenblitt v Rosenblitt, supra; cf., Lohmiller v Lohmiller, supra).* In *Burgel v Burgel (supra),* this court affirmed an order in a matrimonial case where custody was at issue which directed testing similar to that ordered

here. However, in the instant case, no "reasonable ground" for such testing has been shown to exist. Unlike in *Burgel,* there is no admitted use of drugs but rather only the "suspicion" that the mother smoked marihuana which, according to a study submitted by the petitioner, is not readily detectable by the test to which petitioner would have the mother and the third party submit. Under the facts of his case, where there is no discernable legitimate purpose for such testing *(see, Burgel v Burgel, supra,* at 218), it should not have been ordered *(cf., Wegman v Wegman, supra).*

Nor do we discern any legitimate purpose to be served by depositions of the mother and the third party. There are no facts the petitioner claims he needs to discover. Indeed, from the blunderbuss riders appended to the notices, it appears that the petitioner wishes to conduct his own investigation into the background of the mother and the third party, the effect of which can only be to unreasonably annoy, harass and embarrass the participants *(see,* CPLR 3103; *cf., Wegman v Wegman, supra; Lohmiller v Lohmiller, supra; Rosenblitt v Rosenblitt, supra).* Under such circumstances, courts should not hesitate to step in so as to prevent improper use of statutorily authorized disclosure devices.

With respect to that branch of the cross motion which was to compel the petitioner to turn over pertinent videotapes, we note that the mother correctly urges on appeal that failure to comply with the order dated December 19, 1989, is ground for imposition of sanctions *(cf.,* CPLR 3126). However, the mother made no application for the imposition of sanctions before the Family Court. Therefore her assertion is not a basis for modification of the order appealed from. Kunzeman, J. P., Harwood, Balletta and O'Brien, JJ., concur.